IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
09/01/2015

| | | |
|---|---|---|
| IN RE: § | | |
| § | CASE NO: 13-34274 | |
| VENEZIA EDWARDS; aka EDWARDS; § | CHAPTER 7 | |
| aka EDWARDS § | | |
| § | | |
| Debtor(s). § | DAVID R. JONES | |
| § | | |
| § | | |
| ALLISON D BYMAN § | | |
| § | | |
| Plaintiff(s), § | | |
| § | | |
| vs. § | ADVERSARY NO. 14-3111 | |
| § | | |
| WILLIAM EARL DENSON, *et al* § | | |
| § | | |
| Defendant(s). § | | |

## MEMORANDUM OPINION

In this adversary proceeding, Allison Byman, chapter 7 trustee (the "Trustee") seeks to avoid certain transfers of real property by Venezia Edwards (the "Debtor") to her siblings just prior to the petition date as fraudulent or preferential transfers under both state and federal law. The siblings contend that, despite the fact that the Debtor executed and delivered deeds on the eve of bankruptcy, the transfers actually occurred by way of adverse possession or by oral conveyance more than ten years prior to the petition date. The Court will grant partial relief as set forth below. A separate judgement consistent with this opinion will issue.

### Procedural Background

On July 11, 2013, the Debtor filed a voluntary chapter 7 petition on July 11, 2013 [Docket No. 1, Case No. 13-34274]. Allison Byman was appointed as the chapter 7 trustee in the case. The Debtor received her discharge on October 16, 2013 [Docket No. 11, Case No. 13-34274].

On April 9, 2014, the Trustee initiated this adversary proceeding against William Earl Denson and Deborah Denson Washington. Mr. Denson and Ms. Washington are the Debtor's brother and sister, respectively. In her complaint, the Trustee seeks to recover the value of the Debtor's one-third interest in two parcels of real property[1] and related insurance proceeds pursuant to 11 U.S.C. §§ 544, 547, 548 and 550 and TEX. BUS. & COM. CODE §§ 24.005 and 24.006 [Docket No. 23, Adv. No. 14-3111]. The Trustee also seeks the recovery of her

---

[1] The two properties are defined below as the San Jacinto Property and the Terry Street House.

attorney's fees incurred in the prosecution of this adversary proceeding [Docket No. 23, Adv. No. 14-3111].

Mr. Denson and Ms. Washington filed their original answer to the Trustee's complaint on May 14, 2014 [Docket No. 11, Adv. No. 14-3111].

Pursuant to the Court's October 17, 2015 Order, the Trustee filed her amended complaint on October 20, 2014 [Docket No. 23, Adv. No. 14-3111].  The amended complaint corrects certain factual errors in the Trustee's complaint based on the Debtor's schedules [Docket No. 18, Adv. No. 14-3111].  The amended complaint also drops the Trustee's claims for preferential transfers related to the Terry Street House and the Insurance Proceeds.

The parties filed their joint pre-trial report on January 5, 2015 [Docket No. 25, Adv. No. 14-3111].  In the joint report, the parties stipulated to certain facts [Docket No. 25, Adv. No. 14-3111].  On February 10, 2015, the Court conducted a trial on the merits [Docket No. 31, Adv. No. 14-3111].  At trial, the parties further stipulated to the value of the transfers at issue.  The Court heard testimony from the Trustee, the Debtor, Mr. Denson, Frank Washington and William Potter [Docket No. 31, Adv. No. 14-3111].  The Court admitted Trustee Exhibits 1-7 and 10-23 and Denson/Washington Exhibits 1, 5, 6, 11, 12, 15, 17, 19, 20, 22, 23 and 25 [Docket No. 31, Adv. No. 14-3111].  At the conclusion of the evidence and on the request of the parties, the Court continued the trial to February 17, 2015 to allow the parties to negotiate a resolution [Docket No. 31, Adv. No. 14-3111].

On February 17, 2015, the parties announced that no resolution had been reached and proceeded with closing arguments.  Based on the evidence received, the stipulations of the parties and the arguments of counsel, the Court makes the following findings of fact and conclusions of law.

## Stipulations of Fact

The parties stipulated to the following facts in their joint pretrial report which are accepted by the Court [Docket No. 25, Adv. No. 14-3111].  These facts are repeated in their entirety and in the form submitted:

1. Venezia Edwards (the "Debtor") filed a voluntary petition under chapter 7 of the United States Bankruptcy Code on July 11, 2013.  Allison D. Byman was appointed chapter 7 trustee to administer the assets of this bankruptcy estate.

2. Defendant William Earl Denson ("Mr. Denson") is the brother of the Debtor. Mr. Denson was, at all relevant times, an "insider" of the Debtor as that term is defined in both the U.S. Bankruptcy Code (the "Bankruptcy Code") and the Texas Business & Commerce Code[.]

3. Defendant Deborah Denson Washington ("Ms. Washington") is the sister of the Debtor.  Ms. Washington was, at all relevant times, an "insider"

Case 14-03111   Document 32   Filed in TXSB on 09/01/15   Page 3 of 10

of the Debtor as that term is defined in both the Bankruptcy Code and the Texas Business & Commerce Code.

4. On March 26, 1987, Vatchell Denson died intestate. Vatchell Denson was the father of the Debtor, Mr. Denson and Ms. Washington. The Debtor, Mr. Denson and Ms. Washington each inherited a one-third interest in the estate of their father.

5. Included in the estate of the Debtor's father were the following real properties:

(a) 29.7 acres generally described as tracts 102, 103 and 104 in the Vital Flores Survey, Abstract 14, in San Jacinto County, Texas, more particularly described on Exhibit "A" to the Trustee's First Amended Complaint [adv. docket no. 23] (the "San Jacinto County Property");

(b) Lot Seven (7) in Block One Hundred Sixty-Nine (169) of Ryon Addition to the City of Houston, Harris County, Texas, according to the map thereof recorded in Vol. 9A, Page 110 of the Deed Records of Harris County, Texas, commonly known as 5315 Terry Street, Houston, Texas 77009 (the "Terry Street House"); and

(c) Lot Eight (8) in Block One Hundred Sixty-Nine (169) of Ryon Addition to the City of Houston, Harris County, Texas, commonly known as 5311 Terry Street, Houston, Texas 77009 (the "Lot").

6. Many years ago, the Debtor agreed with Mr. Denson and Ms. Washington that the San Jacinto Property was Ms. Washington's if she assumed the payment of all taxes assessed against the property (the "Agreement Regarding San Jacinto County").

7. No conveyance from the Debtor to Ms. Washington of the Debtor's one-third interest in the San Jacinto County Property was recorded in the real property records of San Jacinto County at the time the Agreement Regarding San Jacinto County was made.

8. On March 13, 2013, the Debtor executed a Quitclaim Deed (the "San Jacinto County Quitclaim Deed") to Ms. Washington for the San Jacinto County Property. The San Jacinto County Quitclaim Deed was recorded on March 18, 2013.

9. In 2013, the value of the San Jacinto County Property was $180,000.00.

10. More than 15 years ago, the Debtor agreed with Mr. Denson and Ms. Washington that the Lot was the Debtor's in exchange for the her one-third interest in the Terry Street House (the "Agreement Regarding Terry Street House").

3 / 10

11. On August 31, 1999, Ms. Washington and Mr. Denson executed Quitclaim Deeds transferring their respective one-third interests in the Lot to the Debtor. The Quitclaim Deeds were recorded on September 3, 1999.

12. No conveyance of the Terry Street House from the Debtor to Mr. Denson or Ms. Washington was recorded in 1999.

13. The Terry Street House suffered a fire on or around November 2, 2012, reported to the insurance company on or around November 26, 2012.

14. On January 14, 2013, the insurance company, Texas FAIR Plan Association issued and mailed to 3714 Hage Street, Houston, Texas 77093, two checks totaling $73,150.00, jointly payable to the Debtor, Mr. Denson and Ms. Washington (the "Insurance Proceeds").

15. Between January 14, 2013 and January 19, 2013, the Debtor and her siblings endorsed the Insurance Proceeds checks.

16. On January 19, 2013, Mr. Denson deposited the Insurance Proceeds into his bank account.

17. On or about March 13, 2013, the Debtor executed a Quitclaim Deed (the "Terry Street House Quitclaim Deed") to Mr. Denson and Ms. Washington for the Terry Street House. The Terry Street House Quitclaim Deed was recorded on March 14, 2013.

At trial, the parties further stipulated that the value of a one-third interest in the San Jacinto Property on March 18, 2013 was worth $60,000.

## Analysis

The Court has jurisdiction over this contested matter pursuant to 11 U.S.C. § 1334. This contested matter is a core proceeding arising under title 11 pursuant to 28 U.S.C. §§ 157(b)(2)(A), (F), (H) and (O). The Court has constitutional authority to enter a final order in this matter under the Supreme Court's holding in *Stern v. Marshall*, 131 S.Ct. 2594 (2011). To the extent necessary, the parties have consented to the entry of a final judgment in this adversary proceeding by the Court [Docket No. 25, Adv. No. 14-3111]. *See Wellness Int'l Network, Ltd. v. Sharif*, 135 S.Ct. 1932 (2015).

### The San Jacinto County Property

The Trustee contends that the Debtor's execution and delivery of the San Jacinto County Quitclaim Deed to Ms. Washington is an avoidable preferential transfer under 11 U.S.C. §§ 547 and 550 as well as a fraudulent transfer under TEX. BUS. & COM. CODE § 24.006(b). In the alternative, the Trustee asserts that the transfer is an avoidable fraudulent transfer under 11 U.S.C. §§ 548 and 550 and TEX. BUS. & COM. CODE §§ 24.005 and 24.006(a). The determinative issue on the Trustee's choice of legal theory is whether the Agreement Regarding San Jacinto County created a claim by Ms. Washington against the Debtor.

Based on the stipulated facts and the relevant testimony, the Court finds that the core of the Agreement Regarding San Jacinto County was the Debtor's promise to convey her one-third interest in the San Jacinto County Property in exchange for Ms. Washington's agreement to assume responsibility for payment of all outstanding and future *ad valorem* taxes on the property. The unchallenged testimony is that Ms. Washington has performed her obligations under the Agreement Regarding San Jacinto County.

Preferential Transfers under 11 U.S.C. § 547

Under 11 U.S.C. § 547, "the trustee may avoid any transfer of an interest of the debtor in property—

    (1)    To or for the benefit of a creditor;

    (2)    for or on account of an antecedent debt owed by the debtor before such transfer was made;

    (3)    made while the debtor was insolvent;

    (4)    made—

        (A)    on or within 90 days before the date of the filing of the petition; or

        (B)    between ninety days and one year before the date of the filing of the petition, if such creditor at the time of the transfer was an insider; and

    (5)    that enables such creditor to receive more than such creditor would receive if—

        (A)    the case were a case under chapter 7 of this title;

        (B)    the transfer had not been made; and

        (C)    Such creditor received payment of such debt to the extent provided by the provisions of this title."

11 U.S.C. § 547.

The Bankruptcy Code defines a "creditor" to be an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor. . . ." 11 U.S.C. § 101(10). "Entity" includes a person. 11 U.S.C. § 101(15). A "claim" is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or right to an equitable remedy for breach of performance if such breach gives rise to a right to payment . . . ." 11 U.S.C. § 101(5). The Court finds that the Agreement Regarding San Jacinto County created a claim against the Debtor in favor of Ms. Washington. The Debtor's interest in

the San Jacinto Property was transferred in satisfaction of that claim. The Trustee has satisfied elements 1 and 2.

Whether the Trustee can satisfy elements 3 and 4 depends on the date that the transfer actually occurred. The Trustee asserts that the transfer occurred on March 18, 2013—the date the San Jacinto County Quitclaim Deed was recorded in the real property records of San Jacinto County. Ms. Washington argues that the Debtor's quitclaim deed conveyed nothing because she already owned the Debtor's interest in the San Jacinto Property. Ms. Washington could not, however, identify the date that the Debtor transferred the property to her—she asserts only that the transfer date was more than 10 years prior to the petition date.

For purposes of determining when a transfer of real property has occurred under § 547, a transfer is perfected when a *bona fide* purchaser of the property from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest that is superior to the interest of the transferee. 11 U.S.C. § 547(e)(1). In general, a conveyance of real property in Texas can only be accomplished by the delivery of a written instrument that is signed and delivered by the conveying party. TEX. PROP. CODE § 5.021 (West 2014). Such a conveyance is void as to a creditor or a subsequent purchaser for valuable consideration without notice unless the instrument is acknowledged and filed of record as required by law. TEX. PROP CODE § 13.001 (West 2014). Texas law requires that instruments relating to real property to be filed in the county in which the property is located. TEX. PROP. CODE § 11.001 (West 2014). Application of the foregoing suggests that the transfer date was March 18, 2013.

Ms. Washington disagrees and asserts that she received title to the San Jacinto Property many years prior to the date that she received the San Jacinto County Quitclaim Deed by means of an oral conveyance or an oral gift. Ms. Washington fails to understand the application of the narrow exception for oral transfers on which she relies.

In 1921, the Texas Supreme Court in *Hooks v. Bridgewater* enforced an oral contract for the sale of real property where (i) the negotiated consideration was paid; (ii) the purchasing party took possession of the property; and (iii) the purchasing party erected valuable improvements on the property. 229 S.W. 1114, 116 (1921); see also *Fandey v. Lee,* 880 S.W.2d 164, 169–70 (Tex. App.—El Paso 1994, writ denied); *Rittgers v. Rittgers,* 802 S.W.2d 109, 113 (Tex. App.—Corpus Christi 1990, writ denied). The equitable premise underlying the decision was that enforcement of the statute of frauds would work a fraud upon the purchaser—the very result that the statute of frauds was designed to prevent. An oral gift is founded on the same three requirements except that proof of a present gift is substituted for the requirement that the negotiated consideration be paid. *Butler v. Lollar*, 199 S.W. 1176 (Tex. Civ. App.—Texarkana 1917, no writ).

This case does not, however, involve the enforcement of an oral contract. The Trustee does not contest that an agreement existed. Ms. Washington does not assert that her sister failed to follow through on her agreement to convey the San Jacinto Property. To the contrary, the Debtor delivered a deed to Ms. Washington, albeit late, on March 18, 2013. The relevant issue in this adversary proceeding is on what date the Debtor perfected the transfer of the San Jacinto Property to Ms. Washington for purposes of a bona fide purchaser under 11 U.S.C § 544. The Court finds that date is March 18, 2013.

In the alternative, Ms. Washington asserts that she acquired the San Jacinto Property by adverse possession. Under Texas law, "'adverse possession' means an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person." TEX. CIV. PRAC. & REM. CODE § 16.021 (West 2002). When a claim of adverse possession is made against a co-owner, the party seeking title by adverse possession must prove "an ouster of the co-tenant not in possession or repudiation of the co-tenancy relationship." *Dyer v. Cotton*, 333 S.W.3d 703, 712 (Tex. App.—Houston [1st Dist.] 2010, no pet.). "[A] co-tenant may not adversely possess against another co-tenant unless it clearly appears he has repudiated the title of his co-tenant and is holding adversely to it." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 756 (Tex. 2003). At trial, Ms. Washington testified that she occupied the San Jacinto Property with the Debtor's consent. No evidence was adduced that the Debtor was excluded from the property in any fashion.

The Court finds these facts to be less than compelling. Ms. Washington already owned a two-thirds interest in the San Jacinto Property. As a co-owner, she had a right to occupy and use the property. *Murphy et al. v. Murphy et al.*, 131 S.W.2d 158 (Tex. Civ. App.—Waco 1939, no writ). Moreover, Ms. Washington provided no testimony regarding the date on which she purportedly took title to the Debtor's one-third interest. More persuasive to the Court was Ms. Washington's testimony that she entered into an agreement with the Debtor to purchase her one-third interest in the San Jacinto Property in exchange for her payment of all *ad valorem* taxes related to the property and then readily accepted a deed conveying the Debtor's interest after the Debtor discovered the problem with title in a meeting with her bankruptcy counsel. Ms. Washington failed to establish the required elements for a claim of adverse possession.

Using a transfer date of March 18, 2013, the Court finds that the transfer from the Debtor to Ms. Washington occurred with the one-year timeframe applicable to insiders under § 547 and that the Trustee has satisfied element 4.

The Trustee must also prove that the Debtor was insolvent at the time of the transfer. The testimony of the Trustee's expert was largely unchallenged. The Court accepts Mr. Potter's testimony and finds that the Debtor was insolvent or became insolvent as a result of the transfer to Ms. Washington on March 18, 2013. Element 3 is satisfied.

Finally, the Trustee must prove that by receiving the transfer of the Debtor's interest in the San Jacinto Property, Ms. Washington received more than she would receive in a chapter 7 liquidation had the transfer not been made. The Court accepts the Trustee's testimony on this issue and finds that element 5 is satisfied.

The Trustee has satisfied each of the required elements under 11 U.S.C. § 547. Having succeeded in establishing an avoidable preferential transfer, the Trustee may recover either the property transferred or a money judgment for its value. 11 U.S.C. § 550. The Trustee has requested the entry of a money judgment. Based on the parties' stipulation, the Trustee is entitled to a money judgment against Ms. Washington in the amount of $60,000.

Fraudulent Transfers as to Present Creditors under § 24.006 of the TEX. BUS. & COM. CODE

The Trustee also seeks to void the transfer of the San Jacinto Property under TEX. BUS. & COM. CODE § 24.006(b). The section provides that:

> [a] transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at the time, and the insider had reasonable cause to believe that the debtor was insolvent.

TEX. BUS. & COM. CODE § 24.006(b) (West 2009). The Trustee provided ample evidence of the existence of multiple present creditors [Exhibits 13-20]. The parties stipulated that Ms. Washington is an insider. As set forth above, the Court finds that the Debtor's interest in the San Jacinto Property was transferred in satisfaction of the Debtor's obligations under the Agreement Regarding San Jacinto County and that the Debtor was insolvent at the time of the transfer. The remaining element is that the Trustee must prove that Ms. Washington had reasonable cause to know that the Debtor was insolvent.

On cross-examination, the Debtor acknowledged that the decision to execute and deliver the San Jacinto County Quitclaim Deed was made after meeting with her bankruptcy counsel. The Debtor's siblings were generally aware of the Debtor's financial position. Moreover, the underlying premise for the Agreement Regarding San Jacinto County was the Debtor's inability to pay her share of the *ad valorem* taxes on the San Jacinto County Property. The Court finds that the Trustee has established a claim under § 24.006(b). The Trustee is therefore entitled to a money judgment for the value of the transferred property. TEX. BUS. & COM. CODE § 24.008 (West 2009). Accordingly, the Trustee is entitled to a money judgment in the amount of $60,000.

The foregoing conclusion is important to the Trustee's claim for attorney's fees. The Bankruptcy Code provides no authority for the award of attorney's fees involving a claim under 11 U.S.C. § 547. Texas law, however, provides that "[i]n any proceeding under this chapter [TUFTA], the court may award costs and reasonable attorney's fees as are equitable and just." TEX. BUS. & COM. CODE § 24.013 (West 2009). A bankruptcy trustee pursues the recovery of avoidable transfers on behalf of a bankruptcy estate to ensure that no single creditor receives a disproportionate share of a debtor's available assets. It would be an injustice to force creditors to pay for the right to be treated equally under the law. The Court finds that the Trustee is entitled to recover her reasonable attorney's fees from Ms. Washington.

The Trustee also asserted claims in the alternative for fraudulent transfer under state and federal law if the Court determined that Ms. Washington held no claim against the Debtor at the time of the transfer. Having found that a claim did exist, the finding negates a claim for fraudulent transfer. Should it be determined, however, that no claim existed, the Court is prepared to make its findings and conclusions regarding the Trustee's fraudulent transfer claims.

**The Terry Street House and Related Insurance Proceeds**

The Trustee next contends that the Debtor's (i) execution and delivery of the Terry Street House Quitclaim Deed to Mr. Denson and Ms. Washington; and (ii) endorsement of the Insurance Proceeds checks and their subsequent deposit to Mr. Denson's bank account are avoidable fraudulent transfers under 11 U.S.C. § 548 and TEX. BUS. & COM. CODE §§ 24.005 and 24.006(a). The Court finds it notable that the Trustee's first amended complaint deleted all preference claims related to this transaction.

Consistent with the above analysis, the Court finds that the unperformed obligations under the Agreement Regarding Terry Street House created a claim against the Debtor in favor of Mr. Denson and Ms. Washington. The Insurance Proceeds were a replacement for the portion of the Terry Street House lost by fire. The Debtor's interest in the Terry Street House and the Insurance Proceeds were transferred in satisfaction of that claim.

Under § 548, value is defined to include the satisfaction of an antecedent debt. 11 U.S.C. § 548(d)(2)(A). Likewise, Texas law defines value to include the satisfaction of an antecedent debt. TEX. BUS. & COM. CODE § 24.004 (West 2009). The Debtor transferred her interest in the Terry Street House and the Insurance Proceeds to satisfy her obligations under the Agreement Regarding Terry Street House. The Debtor received significant value under the agreement. The Court finds that the transfers were made for reasonably equivalent value. The Court therefore concludes that the Trustee's fraudulent transfer claims that are based on the debtor's failure to receive "reasonably equivalent value" must fail. Should it be determined that no claim existed and therefore no reasonably equivalent value was provided, the Court is prepared to make its findings and conclusions regarding the Trustee's constructive fraudulent transfer claims.

Both 11 U.S.C. § 548 and TEX. BUS. & COM. CODE § 24.005, however, provide for the avoidance of a transfer if made with the intent to "hinder, delay or defraud" a creditor. Parties rarely volunteer that they have acted with fraudulent intent. In recognition of the difficulty in determining an actor's state of mind, Texas law identifies a number of indicia or badges of fraud to consider in determining whether fraudulent intent is present, including, whether:

(i)     the transfer was made to an insider;
(ii)    the debtor retained possession or control of the property after the transfer;
(iii)   the transfer was concealed;
(iv)    before the transfer, the debtor had been sued or threatened with suit;
(v)     the transfer was of substantially all the Debtor's assets;
(vi)    the debtor absconded;
(vii)   the debtor removed or concealed assets;
(viii)  the debtor received reasonably equivalent value in exchange for the transfer;
(ix)    the debtor was insolvent;
(x)     the transfer occurred in proximity to the incurrence of a substantial debt; and
(xi)    the debtor transferred the essential assets of a business to a lienor who transferred the assets to an insider of the debtor.

TEX. BUS. & COM. CODE § 24.005(b) (West 2009). The factors have been used by federal courts in fraudulent transfer cases under 11 U.S.C. § 548 and other proceedings requiring that a party

establish an "intent to hinder, delay or defraud." *See In re Sissom*, 366 B.R. 677, 692 (Bankr. S.D. Tex. 2007); *In re Houston Drywall, Inc.*, No. 06-3415, 2008 WL 1754526 (Bankr. S.D. Tex. July 10, 2008). In addition, courts in this district have also considered whether:

(i) the transfer was done just prior to the bankruptcy filing;
(ii) the debtor is able to explain the disappearance of the assets; and
(iii) the debtor has engaged in a pattern of "sharp dealing" prior to the bankruptcy.

*Sissom* at 698-700.

Applying the above factors to the facts of this case, the Court finds that only three of the factors—the transfer was to an insider; the debtor's insolvency on the date of the transfers; and the proximity of the transfer to the bankruptcy filing support a finding of actual intent. The Trustee points to the fact that the transfers were made after the Debtor consulted with a bankruptcy attorney and just prior to the bankruptcy filing. Acting upon an attorney's advice does not *per se* constitute fraudulent intent—especially when the actions taken were fully disclosed in the Debtor's initial statement of financial affairs. Based on the record presented, the Court finds that the existence of these three factors in this adversary proceeding does not establish the existence of fraudulent intent. The Trustee has failed to satisfy her burden that the transfers of the Debtor's interest in the Terry Street House and the Insurance Proceeds were made with the actual intent to hinder, delay or defraud creditors. Accordingly, the Trustee's claims that are based on the Debtor's alleged actual fraudulent intent must fail.

### Conclusion

For the reasons set forth above, this Court finds that the Trustee is entitled to a money judgment against Deborah Denson Washington in the amount of $60,000. In addition, the Trustee is awarded her reasonable attorney's fees plus pre-judgment interest from March 18, 2013 to the entry date of the Court's judgment and post-judgment interest at the federal judgment rate from the date of entry of the Court's judgment until paid. A separate judgment consistent with this opinion will issue. If necessary, the Court will conduct a further hearing to determine the amount of attorney's fees to be awarded.

**SIGNED: September 1, 2015.**

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**